IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MELVIN E. JOHNSON, JR., | CASE NO. 4:24-cv-898 |
| Petitioner, | DISTRICT JUDGE CHRISTOPHER A. BOYKO |
| vs. | |
| WARDEN CHARLES MAIORANA, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Melvin E. Johnson, Jr. has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Johnson is in federal custody at Canaan U.S.P. and challenges his conviction and sentence in the case *State v. Johnson*, Mahoning County Court of Common Pleas, Case No. 13-CR-380D.[1] The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss the Petition.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28

---

[1]    Although Johnson is currently in custody serving a federal sentence, this Court has jurisdiction over Johnson's petition challenging his state-court conviction because Johnson will serve this state sentence after he serves his federal sentence. *See* Doc. 9-1, at 145; *Maleng v. Cook*, 490 U.S. 488, 493 (1989).

U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Seventh Appellate District summarized the facts underlying Johnson's conviction as follows:

> ### The Organization
>
> {¶2} This case involves crimes related to a million dollar drug distribution organization led by Vincent Moorer and DeWaylyn "Waylo" Colvin. Originally, two separate drug distribution organizations existed: a group led by Colvin that sold heroin and a group led by Moorer that sold crack cocaine. At some point, the two groups merged and formed one heroin distribution organization. Colvin and Moorer were jointly in charge of the organization. Appellant was known as a "triggerman" within the organization. A triggerman is responsible for the deaths of anyone who did not pay money owed to the organization or harmed or offended someone in the organization.
>
> ### Indictments
>
> {¶3} This matter arose from an April 11, 2013 indictment charging Colvin, Michael Austin, and Hakeem Henderson with various drug offenses. On May 16, 2013, a superseding indictment was filed against Colvin, Austin, and Henderson. On May 21, 2015, a second superseding indictment was filed and added Moorer, Appellant, and Nahdia Baker as defendants. Baker is also a member of the organization. Appellant was charged in thirteen of the counts.
>
> *    *    *
>
> ### J.M. Incident
>
> {¶5} On March 20, 2014, J.M. was shot near the intersection of South Avenue and Mathews Road. According to M.P., a member of the organization, J.M. was targeted because Moorer believed that he had set up Dashonti Baker to be robbed. Baker is

2

also a member of the organization. Moorer obtained a phone belonging to Dashonti Baker and used it to text J.M. to set up a fake drug deal and lure him to the South Avenue/Mathews Road location.

{¶6} Moorer drove a rented sports utility vehicle ("SUV") to the South Avenue/Mathews Road location. M.P. sat in the front passenger seat and Appellant sat in the backseat. Once the SUV arrived at the targeted location, Appellant exited the SUV with a gun on his person. Moorer drove into the parking lot of a nearby car wash and waited. Appellant approached J.M. and fired approximately four shots at J.M. who fell to the ground. Appellant ran back to the SUV which drove away after picking up Appellant.

{¶7} J.M. made his way to the intersection of Cook and Evans Avenues before police officers located him. According to Officer Joseph O'Grady, J.M. had been shot three times. Det. Glenn Patton testified that he was able to secure J.M.'s phone at the scene and retrieved the text message conversation with Baker's phone using a tool called "Cellbrite."

*Trial*

{¶8} Appellant and his codefendant Moorer were tried in a bench trial commencing on March 2, 2017. The remaining defendants were tried in two separate trials.

*State v. Johnson,* No. 17 MA 0050, 2019 WL 1400096, at *1–2 (Ohio Ct. App.

March 19, 2019).

3

**Procedural background**

*Trial court proceedings*

In May 2015, a Mahoning County Grand Jury indicted Johnson in a second superseding indictment on fifteen counts. Doc. 9-1 at 7–22 (Exhibit 1).[2] These included four counts of attempted murder, in violation of Ohio Revised Code § 2903.02(A)(D) (counts 15, 22, 24, and 26); four counts of felonious assault, in violation of Ohio Revised Code § 2903.11(A)(2)(D) (counts 16, 23, 25, and 27); two counts of having a weapon while under disability, in violation of Ohio Revised Code § 2923.13(A)(2)(B) (counts 17 and 28); one count of aggravated arson, in violation of Ohio Revised Code §2909.02(A)(2)(B)(1)(3) (count 18); one count of arson, in violation of Ohio Revised Code § 2909.03(A)(1)(B)(1)(2)(b) (count 19); two counts of improperly discharging a firearm into a habitation, in violation of Ohio Revised Code § 2923.161(A)(1)(C) (counts 20 and 21); and one count of engaging in a pattern of corrupt activity, in violation of Ohio Revised Code § 2923.32(A)(1)(B) (count 29). *Id*. Counts 15, 16, and 20 through 27 contained firearm specifications. *Id*. Johnson, through counsel, pleaded not guilty to all of the charges. *Id*. at 24 (Exhibit 2).

Johnson filed several motions before and during the bench trial, which began on February 21, 2017, some of which he filed pro se. In October and November 2016, Johnson moved to dismiss the indictment as defective and to

---

[2]    In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

strike the testimony of State witness Morris Perry. Doc. 9-1 at 26, 33 (Exhibits 3 & 4). In January 2017, defense counsel moved to exclude Perry's "opinion" testimony as hearsay. *Id*. at 41 (Exhibit 5). In February 2017, Johnson and his counsel jointly moved to strike Perry's testimony and to dismiss the indictment, *id*. at 44–45 (Exhibit 6), and the next day the trial court overruled Johnson's February motion, *id*. at 53, 55 (Exhibits 7 & 8).

A few days later, defense counsel filed a motion in limine to exclude the proposed testimony of Johnson's former attorney about incriminating statements Johnson allegedly made in the jail after meeting with former counsel. Doc. 9-1 at 67 (Exhibit 11). The trial court denied the motion because it found that any statement Johnson made wasn't made to his attorney, but to the guard, so it was not protected by the attorney-client privilege. Doc. 9-2, at 32–33. Johnson's counsel filed a supplemental memorandum, which the trial court denied. Doc. 9-1, at 57, 65. (Exhibits 9 & 10).

In March 2017, Johnson filed a pro se motion to suppress Perry's statement, Doc. 9-1 at 114 (Exhibit 16), and to dismiss his case based on speedy trial violations, *id*. at 120. (Exhibit 17). The trial court overruled the motions, finding that it had already considered the issues. *Id*. at 125 (Exhibit 18).

After a bench trial, *see* Doc. 9-1, at 137 (Exhibit 21), the trial court found Johnson guilty of: attempted murder of John Myles (count 15) and the attendant firearm specification; felonious assault of John Myles (count 16) and the attendant firearm specification; having a weapon while under a disability

5

(count 17); and engaging in a pattern of corrupt activity (count 29). *Id*. at 140–41 (Exhibit 22). The court found Johnson not guilty on the remaining counts. *Id*. At sentencing on March 22, 2017, the court merged counts 15 and 16. *Id*. at 144 (Exhibit 23). The court sentenced Johnson to 11 years in prison on count 15, and 3 years for the attendant firearm specification; 3 years in prison on count 17; and 11 years in prison on count 29, for a total of 28 years in prison. *Id*. at 145. The court ordered the sentences to run consecutive to each other and to Johnson's prior federal sentence. *Id*.

*State habeas petition*

In April 2017, Johnson filed in the trial court a pro se state petition for a writ of habeas corpus. Doc. 9-1, at 80 (Exhibit 13). The State moved to dismiss the petition for technical deficiencies, including that Johnson had an adequate remedy available at law in the form of a direct appeal. *Id*. at 93, 96 (Exhibit 14). On April 20, 2017, the trial court overruled Johnson's petition. *Id*. at 112 (Exhibit 15).

*Direct appeal*

Johnson, through new counsel, appealed to the Ohio court of appeals.[3] Doc. 9-1, at 148 (Exhibit 24); 153 (Exhibit 26). In his brief, Johnson raised the

---

[3]     Johnson had filed a pro se appeal before the trial court had sentenced him, Doc. 9-1, at 127 (Exhibit 19), which the Ohio court of appeals rejected as premature, *id*. at 135 (Exhibit 20).

following assignments of error:[4]

> 1. The evidence in this case was insufficient as a matter of law to support the convictions.
>
> 2. The verdicts in this case were against the manifest weight of the evidence.
>
> 3. The admission of unauthenticated cell phone text messages violates the Confrontation Clause of the Sixth Amendment to the United States Constitution.
>
> 4. Unspecified "other drug offenses" cannot serve as predicate Offense for a conviction of engaging in a pattern of corrupt activity unless such prior conviction was expressly alleged in the indictment.

*Id*. at 154. On March 19, 2019, the Ohio court of appeals affirmed Johnson's convictions. *Id*. at 332 (Exhibit 29).

In December 2024, Johnson filed a pro se motion for leave to file a delayed appeal with the Ohio Supreme Court. Doc. 22-1, at 2 (Exhibit 29-A). In February 2025, the Ohio Supreme Court denied Johnson's motion *Id*. at 24 (Exhibit 29-B).

*State postconviction petition*

Meanwhile, in March 2017, Johnson filed a timely pro se petition for post-conviction relief. Doc. 9-1, at 253 (Exhibit 30). The State moved for judgment on the pleadings. *Id*. at 267 (Exhibit 31). On June 16, 2017, the trial court sustained the State's motion for judgment on the pleadings, finding that

---

[4]    In this report and recommendation, Johnson's grounds for relief are reproduced as written.

Johnson failed to submit any competent, credible evidence outside the record to support a constitutional violation or his actual innocence. *Id.* at 279 (Exhibit 32).

> *Motion for leave to file a motion for new trial*

On June 22, 2022, Johnson, through new counsel, moved under Ohio Criminal Rule 33 for leave to file a motion for new trial based on newly discovered evidence. Doc. 9-1, at 281 (Exhibit 33). Johnson attached to his motion affidavits from: the victim, John Myles, who denied that Johnson shot him or that he had said that Johnson shot him; Morris Perry, who denied participating in or knowing about a criminal enterprise with Johnson; and Johnson, who stated that the affidavits contained exculpatory information that he could not have discovered at the time of trial with reasonable diligence. *Id.* at 282–89. On June 22, 2022, the trial court overruled Johnson's motion. *Id.* at 308 (Exhibit 35). On September 6, 2022, Johnson moved for reconsideration and attached a second copy of the victim's affidavit. *Id.* at 376–78 (Exhibit 47). On September 27, 2022, the trial court denied Johnson's motion for reconsideration. *Id.* at 381 (Exhibit 48).

Meanwhile, on September 6, 2022, Johnson appealed to the Ohio court of appeals the trial court's denial of his motion for leave to file a motion for new trial, Doc. 9-1, at 310 (Exhibit 36), and filed a motion for leave to file a delayed appeal, *id.* at 313 (Exhibit 37). The Ohio court of appeals granted Johnson's

motion for leave to file a delayed appeal. *Id*. at 325 (Exhibit 39). In his appellate brief, Johnson raised the following assignments of error:

> 1. The trial court erred and abused its discretion in summarily denying appellant's motion for leave to file a motion for a new trial based upon newly discovered evidence, without a hearing.

> 2. The trial court erred in summarily denying appellant's motion without making any factual findings or conclusions of law or holding a hearing, thereby abusing its discretion in denying appellant's motion for leave to file a motion for a new trial.

Doc. 9-1, at 330, 333 (Exhibit 40). On March 23, 2023, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 349 (Exhibit 42).

On March 30, 2023, Johnson timely appealed to the Ohio Supreme Court. Doc. 9-1, at 363 (Exhibit 43). In his memorandum in support of jurisdiction, Johnson raised the same issues of law recited above. *Id*. at 366. On May 23, 2023, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id*. at 374 (Exhibit 46).

*Motions for discovery*

In September 2024, Johnson, through counsel, filed in the trial court a motion for discovery, which the trial court denied the following month. Doc. 22-1, at 25 (Exhibit 46-A). Johnson also filed on both of his appellate-court dockets a combined motion to release any discovery documents within court files for the purpose of advancing a federal habeas petition. *Id*. at 27 (Exhibit 46-B). In October 2024, the Ohio court of appeals denied Johnson's motion in one case because the file was no longer with it. *Id*. at 28 (Exhibit 46-C). In December

2024, a magistrate in the other case denied Johnson's motion for the same reason. *Id.* at 29 (Exhibit 46-D).

*Federal habeas corpus petition*

On May 21, 2024, Johnson, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. On February 25, 2025, Johnson, with leave of court, filed a second amended petition for a writ of habeas corpus. Doc. 16. In his second amended petition, he raises the following four grounds for relief:

> **Ground one**: Denial of Due Process in Failing to Grant Leave to File a Motion for New Trial.
>
> *Supporting facts:* Petioner presented the sworn affidavits of two new material witnesses, which would very likely result in an acquittal verdict at trial. Alleged victim, John Willie Myles, now states that it was not petitioner who shot him. Material State witness, Morris Perry, has recanted his origial testimony and now states that he was subjected to intense pressure by police to testify for the State.
>
> **Ground two**: Actual Innocence of the Crimes
>
> *Supporting facts:* Alleged victim, John Willie Myles, now states that it was not petitioner who shot him. Material state witness, Morris Perry, has recanted his original testimony and now states that he was subjected to intensive pressure by police to testify for the State.
>
> **Ground three**: Violation of the Confrontation Clause
>
> *Supporting facts:* The trial court allowed the prosecution to introduce unauthenticated phone text messages into evidence, these text messages were

testimonial in nature and the recipient of these messages did not testify.

**Ground four:** Due Proces Violation—lnufficient Indictment

*Supporting facts:* The indictment did not adequetley place defendant on notice of the federal charges that the state used ss predicate acts to establish that he was engaging in a pattern of corrupt activity as charged.

Doc. 1, at 5–10; Doc. 16. The Warden filed a Return of Writ, Doc. 22, and Johnson filed a traverse, Doc. 24.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id*.
In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors
when determining whether a claim is barred on habeas corpus review due to a
petitioner's failure to comply with a state procedural rule: whether (1) there is
a state procedural rule applicable to the petitioner's claim and whether the
petitioner failed to comply with that rule; (2) the state court enforced the
procedural rule; (3) the state procedural rule is an adequate and independent
state ground on which the state can foreclose review of the federal
constitutional claim; and (4) the petitioner can demonstrate cause for failing to
follow the rule and actual prejudice by the alleged constitutional error. 785
F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the
petitioner's failure to comply with the procedural rule, the state court declines
to reach the merits of the issue, and the state procedural rule is an independent
and adequate grounds for precluding relief, the claim is procedurally
defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise
a claim in state court, and pursue that claim through the state's 'ordinary
appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*,
526 U.S. at 848). "If, at the time of the federal habeas petition, state law no
longer allows the petitioner to raise the claim, the claim is procedurally
defaulted." *Id*. While the exhaustion requirement is satisfied because there are
no longer any state remedies available to the petitioner, *see Coleman v.*

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for

15

instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*Ground one is not cognizable*

In ground one, Johnson alleges that his due process rights were violated when the trial court denied him leave to file a motion for a new trial. Doc. 1, at 5; Doc. 16, at 1. To recap: more than three years after the Ohio court of appeals affirmed his conviction, Johnson filed in the trial court a motion for leave to file a motion for new trial. Doc. 9-1, at 281–89. In support of his motion, Johnson submitted affidavits from two individuals—the victim (John Myles)

and a State witness (Morris Perry)—which, Johnson alleged, indicated that Johnson was not the shooter. *Id.* at 285–89. The trial court denied Johnson's motion and the Ohio court of appeals affirmed, finding that Johnson's motion for leave was untimely under Ohio Criminal Rule 33(B). *Id.* at 349–61; *State v. Johnson*, Case No. 22 MA 0096, 2023 WL 2599552, at *3–7 (Ohio Ct. App. March 21, 2023).

In his Traverse, Johnson asserts that ground one has "several different branches." Doc. 24, at 8. He contends that the affidavits he submitted with his motion for leave to file a motion for new trial "clearly contradict the State's contention that [Johnson] was the shooter." *Id.* And he says that the affidavits "mention police coercion/suggestion[] in trying to obtain witness identifications of [Johnson] as the triggerman." *Id.* Respondent argues that this ground is not cognizable.[5] Doc. 22, at 21.

First, I discuss what Johnson *hasn't* alleged. In his Traverse, when describing the two "branches" of ground one, Johnson discusses the trial court's allegedly "arbitrary denial" of his motion and also mentions his "right to

---

[5]     Respondent also argues that ground one is procedurally defaulted because Johnson didn't present this claim to the Ohio courts as a federal constitutional issue. Doc. 22, at 13–15. Johnson disputes this contention. Doc. 24, at 2–3. When the merits of a claim, or, as here, the cognziability of a claim, is more straightforward than the procedural default question, a court isn't required to first address procedural default. *See, e.g., Reynolds v. Wainwright*, No. 3:19-cv-1666, 2020 WL 6492830, at *13 (N.D. Ohio Oct. 8, 2020) (citing cases, including *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *report and recommendation adopted*, 2020 WL 6488286 (N.D. Ohio Nov. 4, 2020). So I only address the cognizability of ground one.

present a defense." Doc. 24, at 8–9. As for an "arbitrary denial," Johnson made this argument to the state court when he claimed that the trial court abused its discretion in denying his motion. *See* Doc. 9-1, at 366. Johnson does not make an abuse-of-discretion claim in his habeas petition, *see* Doc. 1, at 5, Doc. 16, and if he had it would be not cognizable, *see Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (while an underlying constitutional claim may constitute federal habeas relief, whether the state court abused its discretion in denying the defendant relief on that underlying claim is not itself a federal constitutional violation). Nor has Johnson alleged a "right to present a defense" claim. *See* Doc. 1, at 5; Doc. 16. He may not attempt to do so in his Traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *see Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019). That leaves Johnson's due process claim.

Johnson's motion for leave to file a motion for new trial is a state collateral proceeding because Johnson filed it well after the Ohio court of appeals affirmed his conviction on direct appeal. *See Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009). And the Sixth Circuit "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986)); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir. 2017). Ground one is therefore not cognizable. *See also*

*Mock v. Bracy*, No. 4:22-cv-937, 2024 WL 2347279, at *21 (N.D. Ohio May 22, 2024) (finding that "a state court's denial of a post-judgment motion for leave to file a delayed motion for a new trial[] is 'not cognizable in a federal habeas corpus action.'"), *certificate of appealability denied*, No. 24-3563, 2024 WL 5278796 (6th Cir. Nov. 7, 2024).

Moreover, the Ohio court of appeals found untimely under Ohio Criminal Rule 33(B) Johnson's motion for leave to file a motion for new trial. The court explained that Johnson's submitted affidavits "do not facially support a claim that [Johnson] was unavoidably prevented from timely discovering the evidence upon which his motion for new trial could rely." *State v. Johnson*, Case No. 22 MA 0096, 2023 WL 2599552, at *3–7 (Ohio Ct. App. March 21, 2023); *see also* Ohio Crim Rule 33(B) (late motions for a new trial based on newly discovered evidence must show "by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely"). Johnson does not challenge this finding. He only argues that the affidavits he submitted would show that he was not the shooter, Doc. 1, at 5, Doc. 24, at 2–3, 8–9, but this doesn't address the timeliness issue.

Not only has Johnson failed to address this issue, but Rule 33(B)'s requirement that a defendant who files a late motion for a new trial must prove that he was "unavoidably prevented from the discovery of the evidence upon which he must rely," *see* Ohio Crim. R. 33(B), is a state-law issue not cognizable

on federal habeas review,[6] *see Pudelski*, 576 F.3d at 611 ("even though [the petitioner] invokes the concept of federal due process, his claim is clearly premised on issues of state law …. [n]ot subject to habeas review.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). And Johnson has not shown how the state court's application of Rule 33(B) would offend fundamental fairness or otherwise violate his due process rights. *See Pudelski*, 576 F.3d at 611.

In any event, Johnson's claim—if he had sufficiently articulated it and this Court were to consider it—would fail. The Ohio court of appeals discussed Johnson's submitted affidavits and, in relevant part, explained:

> {¶24} "One way that a defendant may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) is by establishing that the prosecution suppressed the evidence on which the defendant would rely when seeking a new trial." *McNeal*, —— Ohio St.3d ——, 2022-Ohio-2703 at ¶ 2. In *McNeal*, the defendant's motion for leave was accompanied by the affidavit of the defendant's trial counsel establishing a *Brady* violation by the state's failure to disclose in discovery the victim's blood alcohol test, which tended to disprove an element of rape

---

[6]     Johnson cites *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), in support of ground one. Doc. 24, at 3. But in *Glossip*, the Supreme Court reviewed the case on direct appeal from state court—not as a federal habeas case. *See Glossip*, 145 S.Ct. at 624. Moreover, in *Glossip*, the State conceded constitutional error and the Court found that it could review the state court's ruling because the state court's procedural bar was based on federal law, rather than state law. *See Glossip*, 145 S.Ct. at 625. Here, Respondent has not conceded error and the Ohio court of appeals' procedural bar rested firmly on state law. *See Johnson*, 2023 WL 2599552, at *5–7; *see also Guy v. Warden*, No. 21-4164, 2022 U.S. App. LEXIS 20779, at *11 (6th Cir. July 27, 2022) ("Rule 33(B)['s timing requirement] is an adequate and independent state ground for denying federal habeas relief.").

and impeach the victim's testimony about her ability to resist or consent being substantially impaired. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (duty to disclose favorable and material evidence) and *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (same rule applicable to impeaching evidence). The Supreme Court concluded the defendant's motion for leave to file a new trial motion should have been granted because his counsel's affidavit set forth a prima facie case that he was unavoidably prevented from timely moving for a new trial due to the prosecution's failure to make required disclosures and the state failed to respond to the motion for leave. *McNeal*, —— Ohio St.3d ——, 2022-Ohio-2703. The Court remanded with instructions to grant leave to file a motion for a new trial, without remanding for a hearing on the motion for leave. *Id.* at ¶ 27 (noting the trial court prematurely made rulings relevant to an unfiled new trial motion).

{¶25} Here, counsel did not file an affidavit, such as to assert a failure to disclose by the prosecution and to assure the court he reviewed the discovery, or cite to the record in support. Additionally, although a failure to disclose is claimed on appeal, the motion for leave did not raise an allegation that the state failed to disclose information. Moreover, the state responded to the motion for leave in this case, and the record does not support various contentions made or implied by Appellant's motion for leave.

{¶26} The affidavit of Myles attached to Appellant's motion for leave said Myles knew Appellant his whole life and considered him family (calling Appellant a cousin and calling his father an uncle). He did not refer to any reason for a delayed statement. As the state pointed out in responding to Appellant's motion for leave, Myles (the shooting victim) did not testify at trial and his recorded utterances at the shooting scene were disclosed to the defense before trial and played for the court trial. He said he did not know who shot him when asked multiple times while awaiting the ambulance. Myles

also said this at the line-up interview with the detective, which was recorded and disclosed to the defense in discovery.

{¶27} Moreover, a pro se motion filed by Appellant months before trial emphasized that Myles told the detective he would not believe Appellant shot him. The state's response to the motion for leave pointed out Appellant did not attempt to secure the appearance of Myles at trial where information could have been directly elicited from him. Instead, trial counsel utilized the detective on cross-examination to show Myles did not identify Appellant as the shooter. (Tr. 637-638). It was known Myles was not asserting Appellant shot him. The identification of Appellant as the shooter came from Morris Perry.

{¶28} As for Perry, the assertion on appeal that the state failed to disclose Perry's plea agreement is contradicted by the record. At a February 21, 2017 pretrial, the court was informed Perry was offered a deal, with the state recommending community control in exchange for his guilty plea in his drug case and for his continued cooperation in this case. The prosecutor pointed out the defense had already been provided a copy of the plea agreement. It was also noted that Appellant watched Perry's video statement with counsel. Perry subsequently testified at trial in accordance with his video statement, and his plea deal was discussed during testimony. (Tr. 526). Defense cross-examined Perry on his plea and on his various claims.

{¶29} Perry's affidavit attached to Appellant's motion for leave claimed he had no direct knowledge of a criminal enterprise involving Appellant, Moorer, and others and claimed he testified differently because he was pressured by law enforcement and provided an "incentive of no prison time in an unrelated case." This is not a recantation of the testimony on Appellant shooting Myles (or why); however, Appellant believes the affidavit would affect his conviction of engaging in a pattern of

22

corrupt activity. Perry merely provided a generalized statement denying "direct knowledge" of a "criminal enterprise," rather than a specific recantation of pertinent facts. Appellant would know whether he was a part of a drug ring at the time he listened to Perry's statement with his attorney before trial. It was thus the fact of Perry potentially being willing to say something different that Appellant alleges he was unavoidably prevented from discovering within 120 days of trial.

{¶30} However, as the state reminded the trial court in responding to Appellant's motion for leave, Appellant's awareness of Perry's inconsistencies, including an alleged recantation was already on the record. *A year before trial*, the state filed a motion in limine informing the court *the defense* provided an audio recording in discovery wherein Perry (who was secretly recorded) told an organization member he lied in his statement to police and would not be cooperating. The state argued Perry was under duress and in fear. In addition, *months before trial*, Appellant filed a pro se motion to strike Perry's testimony, arguing, in part, any testimony consistent with Perry's statement to police would be perjury and claiming the audio should be considered a recantation; the motion was later renewed by counsel.

{¶31} Also, Perry's affidavit makes no reference to the timing of his newest claim that he lacked direct knowledge of a criminal enterprise. The burden is on the petitioner to show by clear and convincing proof how he was unavoidably prevented from timely discovering the evidence. *Schiebel*, 55 Ohio St.3d at 74. Appellant mentions his own incarceration in claiming he was unavoidably prevented from discovering the information known by the affiants. However, the mere fact of incarceration does not show a movant was unavoidably prevented from learning facts; even an incarcerated movant must explain "how he has been prevented from contacting the affiant." *State v. Moore*, 7th Dist. Mahoning No. 13 MA 9, 2014-Ohio-358, ¶ 24.

23

{¶32} Appellant also relies on the date of the affidavits and his receipt of them. However, "an affidavit signed outside the rule's timeframe does not necessarily indicate that the petitioner was unavoidably prevented from obtaining the evidence or that it is clear and convincing proof." *State v. Franklin*, 7th Dist. Mahoning No. 09 MA 96, 2010-Ohio-4317, ¶ 19. It is "unreasonable for [the movant] not to have attempted to contact [the affiant] sooner" where he knew about the allegedly false testimony he heard at his own trial. *Moore*, 7th Dist. No. 13 MA 9 at ¶ 24. Appellant said his mother got a copy of Perry's affidavit from an unnamed third party and Myles contacted his father so his father hired an investigator to secure an affidavit. Appellant essentially claims he was unavoidably prevented from discovering the information because it was not bestowed upon him earlier. However, "[t]he phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 11. The court is "not required to make suppositions about the reasons for the delay." *Id.* at ¶ 12 (where one affidavit provided no reason for the delay in recanting testimony and other provided unconvincing reason).

{¶33} Under the Eighth District case relied on by Appellant, a hearing on the motion for leave would not be required, as the documents do not facially support a claim that he was unavoidably prevented from timely discovering the evidence upon which his motion for new trial could rely. *See Blalock*, 8th Dist. No. 100194 at ¶ 44. The trial court did not abuse its discretion in refusing to grant leave to file the new trial motion and thus denying the untimely new trial motion filed therewith. Appellant's assignments of error are overruled.

{¶34} As a final observation, we also note that even if leave were granted and the merits of the

submitted new trial motion were reviewed, there would be no abuse of discretion by the trial court in denying the motion Appellant decided to submit with his motion for leave. We rely on our various observations set forth above as to assertions on knowledge, ability to know, and timing. The test for newly discovered evidence for a new trial motion is not merely "newly available" evidence. *State v. Thomas*, 7th Dist. Mahoning No. 18 MA 0132, 2020-Ohio-3637, ¶ 58 (where the information in the affidavit is about the defendant's participation, the defendant had prior knowledge of the information). Appellant was convicted at a bench trial by the same judge who was ruling on the motion. The judge heard the testimony by Perry at trial as compared to the generalized affidavit (that did not mention the shooting or any other facts). The judge was forced to seal parts of the record and presided through pretrial issues with a fearful witness being secretly recorded while claiming he would be recanting. At trial, Perry even disclosed he previously attempted to pay a victim to sign a false affidavit for Moorer.

{¶35} Notably, the sixth factor for granting a new trial (in the case Appellant cites) states, the evidence must "not merely impeach *or contradict* the former evidence." *See Petro*, 148 Ohio St. 505 at syllabus. Appellant omitted the italicized portion from his analysis below. Moreover, the trial court could reasonably conclude the affidavit did not disclose a strong probability the result would be different. Perry's prior testimony would be admissible in any new trial. *See* Evid.R. 801(D). The trial court could likewise reasonably conclude Perry's affidavit did not provide substantial grounds for relief requiring an evidentiary hearing on a motion for new trial (if leave had been granted).

{¶36} As for the affidavit of Myles, his newest statement was merely cumulative. Appellant's motion did not acknowledge that Myles, who was the shooting victim, did not appear at trial to testify. The motion provided no explanation as to why Appellant did not secure his presence at trial or attempt a pre-

25

> trial interview of this life-long family-like friend. At
> the bench trial, the judge heard the defense utilize
> the detective to demonstrate Myles did not identify
> Appellant as the shooter. There was no indication
> the information from Myles was not known (or could
> not have been discovered before trial in the exercise
> of due diligence). *See id*. Accordingly, any
> alternative argument within Appellant's brief on
> entitlement to a new trial is overruled (even if leave
> to file a new trial motion should have granted).

*Johnson*, 2023 WL 2599552, at *5–7. Johnson hasn't challenged any of the state court's findings. He is not entitled to relief on ground one.

> 2.  *Ground two is not cognizable, fails on the merits, and a portion is procedurally defaulted*

In ground two, Johnson alleges that he is actually innocent. Doc. 1, at 7. Respondent argues that Johnson procedurally defaulted this claim because he failed to present it on direct appeal to the Ohio court of appeals. Doc. 22, at 15. In his Traverse, Johnson concedes that he didn't present an "actual innocence" claim to the state courts, but asserts that "the underlying facts supporting his actual innocence claim were indeed presented for review to the state courts" when Johnson filed a motion for leave to file a motion for new trial. Doc. 24, at 4. He also claims that on direct appeal he raised a sufficiency-of-the-evidence claim, which was good enough to present an actual innocence claim. *Id*.

Johnson's actual innocence claim is not cognizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *see Oliver v. Miniard*, No. 24-1857, 2025 U.S. App. LEXIS 9262, at *21–22 (6th Cir. Apr. 17, 2025) (affirming the district court's rejection of the petitioner's actual

innocence claim; "a freestanding claim of actual innocence is not cognizable in a federal habeas proceeding.").

Even if this Court were to consider Johnson's freestanding actual innocence claim, it would fail. To the extent that Johnson relies on the affidavits he submitted with his motion for leave to file a motion for new trial to support his claim of actual innocence, Doc. 24, at 4, he hasn't shown that the Ohio court of appeals' rejection of this evidence, reproduced above, was unreasonable.[7]

Moreover, to the extent Johnson believes that his actual innocence claim can be intuited from his direct-appeal, sufficiency-of-the-evidence claim, *id.* at 4, he is mistaken because "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). And even if it could be said that Johnson had presented an actual innocence claim on direct appeal when he raised a sufficiency-of-the-evidence claim, he procedurally defaulted the claims that he raised to the Ohio court of appeals on direct appeal because, as explained more fully below, he did not timely

---

[7] The affidavits are as the Ohio court of appeals described them. Myles in his affidavit stated that he did not tell Detective Patton that Johnson shot him. Doc. 9-1, at 285–86. Detective Patton at trial said the same thing. *See* Doc. 9-3, at 37–38; *Johnson*, 2023 WL 2599552, at *5. Perry's sworn signature is on a separate page—and with typeface that looks different from—the statements he allegedly swore to. Doc. 9-1, at 987–88; *Johnson*, 2023 WL 2599552, at *2. And Perry stated that he "never participated nor had direct knowledge of a criminal enterprise comprised of" a list of names, including Johnson's. Doc. 9-1, at 287; Doc. 11-1. This is a far cry from Perry stating that Johnson was not the shooter or did not commit acts that gave rise to his convictions. *See Johnson*, 2023 WL 2599552, at *6.

27

appeal to the Ohio Supreme Court and that Court denied his motion for delayed appeal. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (when the Ohio Supreme Court denies a motion for delayed appeal, it enforces a procedural bar).

Ground two is not cognizable, fails on the merits, and a perceived portion of it is procedurally defaulted.

### 3. Grounds three and four are procedurally defaulted

In ground three, Johnson argues that the trial court erred when it permitted the State to use at trial text messages that were unauthenticated, testimonial in nature, and when "[t]he [r]ecipient [o]f [t]hese [m]essages [d]id [n]ot [t]estify." Doc. 1, at 8; Doc. 16, at 1. In ground four, Johnson alleges that the indictment was insufficient because it failed to place him on notice that the State used federal charges as the predicate acts to establish a pattern of corrupt activity. Doc. 1, at 10; Doc. 16, at 1. Respondent argues that these grounds are procedurally defaulted. Doc. 22, at 15–16.

A petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted. *O'Sullivan*, 526 U.S. at 845. Johnson raised the claims in grounds three and four on direct appeal to the Ohio court of appeals, Doc. 9-1, at 154, 183–89, but he did not timely appeal to the Ohio Supreme Court, *see* S.Ct.Prac.R. 7.01(A)(1)(a)(i) ("[t]o perfect a jurisdictional appeal from a court of appeals to the Supreme Court … the appellate shall file a notice of appeal in the Supreme

28

Court within forty-five days from the entry of the judgment being appealed.")
Instead, more than five years after the Ohio court of appeals' ruling, Johnson
filed in the Ohio Supreme Court a motion for leave to file a delayed appeal,
Doc. 22-1, at 2, which the Ohio Supreme Court denied, *id.* at 24. When it did,
it enforced a procedural bar. *See Bonilla*, 370 F.3d at 497 (when the Ohio
Supreme Court denies a motion for delayed appeal, it enforces a procedural bar
precluding federal habeas review).

Johnson contends that the Ohio Supreme Court did not enforce the
procedural bar against him because its judgment entry doesn't say that it
denied Johnson's motion on procedural grounds. Doc. 24, at 5. It is true that
the Ohio Supreme Court's judgment entry is silent as to its reason for denying
Johnson's motion. *See* Doc. 22-1, at 24. But "[w]here a state court is entirely
silent as to its reasons for denying requested relief, we assume that the state
court would have enforced any applicable procedural bar." *Bonilla*, 370 F.3d at
497 (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)).

To overcome this procedural bar, Johnson must show cause for the
default and actual prejudice that resulted from the alleged violation of federal
law that forms the basis of his challenge. *See Coleman*, 501 U.S. at 750.
"Cause" means that "some objective factor external to [Johnson's] defense
impeded his ability to comply with the state's procedural rule." *See Bies v.
Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) (citing *Murray v. Carrier*, 477 U.S.
478, 488 (1986)).

Johnson argues that he "wanted to pursue his appeal in the Ohio Supreme Court," but "he no longer had legal counsel assisting him." Doc. 24, at 5–6. He also states that he has no legal training, he "did not even graduate from high school," and that at an unspecified time, he "returned to federal prison, where all of his legal materials and paperwork were confiscated from him upon entry" and he "had no reasonable ability or materials to prosecute an appeal." *Id.* at 6. Johnson's lack of counsel does not constitute cause to excuse his procedural default because a defendant has no right to counsel for a discretionary appeal to the Ohio Supreme Court. *Wainwright v. Torna*, 455 U.S. 586, 587 (1982); *see Phillips v. Erdos*, No. 3:18-cv-860, 2018 WL 11196506, at *9 (N.D. Ohio Sep. 25, 2018), *report and recommendation adopted*, 2020 WL 2124097 (N.D. Ohio May 5, 2020). Johnson's lack of legal training is not "external to [his] defense." *See Bonilla*, 370 F.3d at 498. Moreover, the record shows that Johnson regularly filed pro se motions, *see, e.g.*, Doc. 9-1, at 33–39, 120–23, showing that he understood basic legal issues and how to raise them with the court. *See Bonilla*, 370 F.3d at 498. Finally, Johnson does not explain what materials he needed to appeal that he did not have and why he could not have obtained them sooner than the five years that passed before he filed his motion for delayed appeal. *See id.* ("Bonilla's mistaken belief that he required a complete copy of his trial transcripts prior to filing a notice of appeal with the Ohio Supreme Court does not establish cause to excuse his procedural default").

And Johnson hasn't shown actual innocence to overcome the procedural bar. For the reasons discussed above regarding the affidavits that Johnson submitted, Johnson has not shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Schlup v. Delo*, 513 U.S. 298, 324 (1995) (a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

**Conclusion**

For the reasons set forth above, I recommend that Johnson's Petition be dismissed.

Dated: July 23, 2025

                                     */s/ James E. Grimes Jr.*
                                     James E. Grimes Jr.
                                     U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).